STATE EX REL. BORNEMANN, Appellant, vs. SCHULTZ, Civil Judge, Defendant: NICKEL, Respondent.*

*December 5, 1951—January 8, 1952.*

* Motion for rehearing denied, without costs, on March 4, 1952.

[redacted]

[redacted]

*Paul E. Bornemann* of Milwaukee, appellant, *in pro. per.*

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan,* attorneys, and *Robert P. Harland* and *John G. Vergeront* of counsel, all of Milwaukee, and oral argument by *Mr. Vergeront.*

CURRIE, J. The relator Bornemann contends that he is entitled to the writ of prohibition prayed for by him on the ground that the civil court of Milwaukee county and the respondent SCHULTZ, as a judge of said court, are without jurisdiction to vacate or grant other relief with respect to the two judgments docketed against Nickel on May 18, 1950, and June 2, 1950, respectively, because more than one year had elapsed since the entering and docketing of both of said judgments on June 5, 1951, when Nickel had the order to show cause issued by the respondent SCHULTZ and served upon Bornemann.

Sec. 21 of the Civil Court Act for Milwaukee county as amended by ch. 37, Laws of 1939, provides in part as follows:

"The said civil court shall have power to open any default judgment rendered by it within one year from the docketing of such judgment, except when an appeal has been taken. *Said court, or the judges thereof, shall have the same power*

*as the circuit court, or the judges thereof, to entertain motions, make orders, stay proceedings, vacate judgments, and to grant new trials and other relief."*

This particular statute was before this court in the case of *Greinke v. Midland Improvement Co.* (1949), 255 Wis. 598, 39 N. W. (2d) 779, wherein it was held that such statute expressly vested in the civil court and its judges the same power as is vested in the circuit court and its judges by sec. 269.46 (1), Stats., which provides:

"The court may, upon notice and just terms, *at any time within one year after notice thereof,* relieve a party from a judgment, order, stipulation, or other proceeding against him obtained, through his mistake, inadvertence, surprise, or excusable neglect and may supply an omission in any proceeding."

Bornemann, therefore, is in error in his contention, that the one-year period in which the civil court, or its judges, might grant relief to Nickel from the two judgments is measured from the date of the docketing thereof, because under the provisions of sec. 269.46 (1), Stats., such year is measured from the time that Nickel had notice of the entry or docketing of said two judgments.

Bornemann, in his petition to the circuit court praying for the issue of a writ of prohibition, does not allege that Nickel had notice of the entry of the judgments prior to June 9, 1950 (one year prior to June 8, 1951, the return date of the order to show cause issued by the respondent SCHULTZ), which allegation would be necessary in order to establish that the civil court, or the respondent SCHULTZ, as a judge thereof, was without jurisdiction to grant Nickel relief with respect to the two judgments previously entered and docketed against him. The petition merely alleges that Nickel "knew" of the entry and docketing of the judgments without stating as of what date Nickel had such knowledge. In Bornemann's brief it is stated that Nickel knew of such

fact on June 9, 1950, because Nickel signed affidavits on that date setting up the entry and docketing of said judgments to support an order to show cause which was served on Bornemann on June 14, 1950, whereby Nickel sought relief from the judgments. However, this statement is not supported by anything in the record in this appeal, and even if it were true, the civil court would still have jurisdiction as of June 8, 1951, to have granted relief from the judgments, if Nickel had had no knowledge of the entry and docketing of the judgments prior to June 9, 1950.

If the briefs of counsel correctly set forth the substance of the wording of the orders entered by the civil court on July 7, 1950, vacating the judgments on terms, it is unfortunate that said orders were so worded. It is preferable in wording an order vacating a judgment on terms that the order provide for the vacation of the judgment upon the terms being met, in this instance upon the payment of a specified sum, so that the judgment is not vacated until the terms have been met. In this instance, the judgments were vacated at once and the defendant Nickel was given two weeks in which to pay the sum imposed as terms, and upon his failure so to pay, the judgments were to be reinstated. The unusual nature of such an order is attested by the fact that the briefs filed by both relator and the respondents in this case cite no authorities on the question of a "reinstated" judgment, and we have been unable through independent research to find a single authority with respect thereto.

It is Bornemann's contention that when the two judgments were reinstated on July 22, 1950, they had the same effect as if they had never been vacated. The respondents contend that upon being reinstated they became new judgments and that the year period in which the civil court, or its judges, might grant relief with respect thereto should be measured from the date Nickel first had notice of said reinstated judg-

ments. However, because Bornemann's petition for the writ of prohibition is defective in failing to allege that Nickel had notice of the entry of the judgments at a time at least one year prior to June 8, 1951 (the return date of the order to show cause served June 5, 1951), it is unnecessary to decide the issue as to whether the entry and docketing dates of the two reinstated judgments were May 18, 1950, and June 2, 1950, respectively, or July 22, 1950.

Bornemann was entitled to have the judgments reinstated on July 22, 1950, if the payment of the $35 required of Nickel on terms for vacating the judgments had not been properly paid by July 21, 1950, the last date under the court's orders of July 7, 1950, for the payment of the same. Whether payment of the same by check instead of cash and such check being for $40 and not $35, and whether proper payment was made by placing the same in an envelope and inserting the same in the mail slot in the door of Bornemann's office, constituted compliance with the terms imposed by the court orders of July 7, 1950, are questions which should receive the careful consideration of the judge of the civil court who may hereafter pass upon the pending application of Nickel for relief from the reinstated judgments.

Bornemann urges as a reason why he will suffer irreparable injury, if the civil court, or one of its judges, should vacate or set aside the reinstated judgments, is that Nickel is likely to convey away his real estate as soon as the same is freed from the lien of said judgments, thus tending to render ineffective any subsequent judgment Bornemann may obtain against Nickel after trial had on the merits. We feel certain that the judge of the civil court who hereafter shall act upon Nickel's pending application for relief from said judgments will give due consideration to this point. Under the provisions of sec. 269.46 (1), Stats., it is not necessary that the relief granted to one seeking to be relieved from a default judgment be a vacation of the judgment, as

such relief can also take the form of an opening up of the judgment whereby the lien of the judgment remains pending the outcome of the trial on the merits. (See 31 Am. Jur., Judgments, pp. 318, 319, secs. 793, 794, where the distinction between vacating a judgment and opening up a judgment is discussed.)

Nickel should have known shortly after July 22, 1950, that the judgments had been reinstated by Bornemann by reason of the fact that Bornemann had returned uncashed the $40 check of Nickel's counsel which Bornemann found on July 24, 1950, had been pushed through the mail slot in his office door. The brief in behalf of Nickel in this appeal states that Nickel had actual knowledge of the reinstatement of the judgments in December, 1950. Nevertheless, Nickel waited until June 5, 1951, to take action to secure relief from the reinstated judgments. While this laches may not deprive the civil court, or its judges, of the right to grant relief from the reinstated judgments, such laches might well provide an additional reason for permitting the lien of such judgments to stand pending trial of the two causes of action on their merits, if the civil court does determine that Nickel is entitled to relief therefrom.

In most cases, where relief is sought by a party against whom a default judgment had been rendered, the interests of justice would seem to be best served by opening up the judgment and granting a trial upon the merits, thus retaining the lien of the judgment pending the outcome of such trial, rather than vacating the judgment outright; but nevertheless this is a matter in which the trial courts are free to exercise their own sound discretion.

The order of the circuit court dismissing the prohibition proceedings must be affirmed because, as hereinbefore pointed out, the relator Bornemann's petition praying for the writ of prohibition does not state facts which show that the civil court of Milwaukee county, or any of its judges, was

without jurisdiction to grant relief to Nickel from said reinstated judgments on June 8, 1951, the return date of the order to show cause issued by the respondent SCHULTZ, as a judge of said civil court.

*By the Court.*—Order affirmed.